IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TERRY J. BURTON,

      Petitioner,                   No. CIV S-02-0675 LKK PAN (JFM) P

    vs.

D. L. RUNNELS, Warden, et al.,

      Respondents.              FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction on charges of forcible rape and false imprisonment. He seeks relief on the grounds that: (1) his Fifth and Fourteenth Amendment rights were violated by the trial court's introduction of his un-Mirandized statement to two deputy sheriffs; (2) his trial counsel rendered ineffective assistance through numerous errors of counsel; and (3) the California Superior Court erred when it denied petitioner's motions for DNA testing. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied. Petitioner has also filed a motion for discovery. That motion will be denied.

/////

/////

1

I. <u>Procedural and Factual Background</u>[1]

    [Petitioner] was charged by an amended information with one count of forcible oral copulation (count I - Pen. Code, § 288a, subd. (c)(2)),[2] two counts of forcible rape (counts II & IV - §261, subd. (a)(2)), and one count of false imprisonment (count III - § 236). The information also included special allegations that (1) [petitioner] committed the acts in counts I, II and IV by means of kidnapping (§ 667.61, subd. (d)(2)); (2) he had suffered two prior strike convictions, both for robbery (§§211, 667, subds. (b) - (I), 1170.12); (3) the robbery convictions qualified as prior convictions of serious felonies (§§ 667, subd. (a); 1192.7, subd. (c) (19)); and (4) [petitioner] had suffered three prior prison terms, one for burglary (§ 459) and two for the above robberies (§§ 667, subd. (a) and 667.5, subd. (b)). [Petitioner] pleaded not guilty to the charges and denied the special allegations.

    Before the trial, the court held a hearing pursuant to Evidence Code section 402.[3] [Petitioner] argued that the conversations about why he was being detained constituted custodial interrogation, and also, that his statement denying the rape should have been suppressed because of the failure of the officers to give him adequate <u>Miranda</u> warnings.[4] The trial court concluded there was no violation of <u>Miranda</u>. Also, the court concluded the statement denying rape was admissible under an exception to the hearsay rule for excited utterances, and additionally, that the remark's probative value outweighed its prejudicial effect. The court denied the motion to exclude the statement.

---

[1] This statement of facts is taken from the January 18, 2001, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-5, appended as Exhibit F to Respondents' August 21, 2003, motion to dismiss.

[2] All further statutory references are to the Penal Code unless otherwise stated.

[3] Evidence Code section 402 provides in relevant part as follows:

    "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.

    "(b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury; but in a criminal action, the court shall hear and determine the question of the admissibility of a confession or admission of the defendant out of the presence and hearing of the jury if any party so requests . . . ."

[4] <u>Miranda v. Arizona</u>, (1966) 384 U.S. 436, [16 L.Ed.2d 694].)

The matter proceeded to trial by jury. [Petitioner] was acquitted of count I - forcible oral copulation, and found guilty of one count of forcible rape (count II) with an additional finding that the special circumstances allegation that [petitioner] had kidnapped the victim during commission of the rape was true. [Petitioner] was also found guilty of false imprisonment (count III). The jury deadlocked as to the second count of forcible rape (count IV), and the court declared a mistrial as to that count.

In a bifurcated court trial, the judge found true the allegations that [petitioner] had suffered three prior convictions and served three prior prison terms, as charged. [Petitioner] was sentenced pursuant to the three strikes law[5] to an aggregate term of 75 years to life, with an additional 11 years to be served consecutively for the two serious prior felony convictions and one prior prison term.[6]

At trial, testimony was admitted relating the following facts relevant to this appeal:

[Petitioner] and the victim met when they were walking on a sidewalk one night in January 1998. They had known each other slightly for several years. Suddenly, [petitioner] attacked the victim, punched her face, grabbed her by her hair, and dragged and pushed her some 80 feet to a muddy and secluded area next to a freeway pedestrian overcrossing. He forced her to perform oral sex on him, made her pull her pants down, raped her once while facing her, and then again from behind.

After the attack, the victim and [petitioner] got up and he told her to "keep walking." They walked to a nearby taco stand. The victim testified she was too frightened to run away, although she did see a police cruiser go by on the way to the stand. Once there, [petitioner] ordered a taco, while the victim obtained the key to the restroom. She mouthed the word "help" to one employee and told the other that she had been raped. She locked herself in the restroom for a few minutes, then ran home with the restroom key.

She then called 911, whereupon the sheriff's deputies and fire department arrived. She was taken to a field showup. The victim was situated behind the headlights of a fire truck and patrol cars when she identified the [petitioner].

[Petitioner] was picked up by Deputy Bankie, the same deputy who had cruised by the taco stand earlier. When [petitioner] asked Deputy Bankie why he was being detained, Bankie told him

---

[5] The term "three strikes law" refers to the sentencing provisions contained in sections 667, subdivisions (b) through (I), and 1170.12.

[6] The sentence for count III, false imprisonment, was stayed pursuant to section 654.

3

"Terry, you know why, just relax. It's all over now." A second deputy, Deputy Anderson, transported [petitioner] to the scene of the showup. Deputy Anderson responded to [petitioner's] questions regarding why he was being arrested with assurances he was not under arrest, just being detained. In the patrol car after the showup, [petitioner] remarked "You talk to that girl! I didn't rape . . . her and I didn't rip her clothes off." Neither deputy had said anything to [petitioner] about why he was being picked up or disclosing the nature of their investigation.

II. Timeliness of Petition

In the answer to the petition respondents argue that petitioner's claim 2 (ineffective assistance of trial counsel) and claim 3 (improper denial of DNA testing) are barred by the statute of limitations contained in 28 U.S.C. § 2244(d). This court agrees that the petition is untimely with respect to these two claims and will recommend that they be dismissed.

    A.  Statute of Limitations and Tolling Provision Under the AEDPA

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). The AEDPA imposed a one-year statute of limitations on the filing of federal habeas petitions. Title 28 U.S.C. § 2244 provides as follows:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4

      (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

      (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). A petition is "'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000).

    B. Factual Background

    For purposes of statute of limitations analysis, the relevant chronology of this case is as follows:

    1. Following his conviction, petitioner filed a timely notice of appeal in state court, in which he claimed that: (1) his motion to suppress the statements he made to police preceding his arrest should have been granted; (2) the jury's finding of special circumstances involving kidnapping during the rape was not supported by sufficient evidence; and (3) the trial court committed sentencing error. (Ex. A.)[7] The California Court of Appeal for the Third Appellate District affirmed petitioner's conviction in an unpublished opinion filed on January 17, 2001. (Id.)

    2. On February 27, 2001, petitioner filed a petition for review in the California Supreme Court, in which he raised the same claims. (Ex. B.) That petition was summarily denied on March 28, 2001. (Ex. C.)[8]

---

[7] For purposes of consistency, this court will refer to the lodged state court records in the same manner in which respondents refer to them. Accordingly, "Pet." refers to petitioner's June 1, 2005 second-amended petition; "LD" followed by a numeric designation refers to respondents' documents lodged April 7, designated by respondents as "lodging documents;" and "Ex." followed by an alphabetic designation refers to the exhibits filed in support of respondents' August 21, 2003, motion to dismiss. See Answer at 1 n.1.

[8] Justice Mosk was of the opinion that the petition should have been granted. (Id.)

5

1    3. On March 28, 2002, petitioner filed a petition for writ of habeas corpus in this

2 court, alleging only his Miranda claim. (See order filed June 1, 2005.)[9]

3    4. On May 3, 2002, petitioner filed a petition for writ of habeas corpus in the

4 California Superior Court, alleging that his trial counsel rendered ineffective assistance and that

5 the sentencing judge erred when he failed to make a full inquiry into petitioner's complaints

6 about his trial counsel. (Exs. D, E.) That petition was denied on the merits and as untimely by

7 order dated May 24, 2002. (Ex. E.)

8    5. On approximately June 4, 2002, petitioner filed a motion for reconsideration of

9 the Superior Court's May 24, 2002, order. (Ex. F.) Petitioner also requested funds for an

10 investigator to conduct DNA testing. (Id.) That motion was denied on July 29, 2002. (Ex. G.)

11    6. On December 11, 2002, petitioner filed a motion for DNA testing, pursuant to

12 Cal. Pen. Code § 1405, in the Sacramento County Superior Court. (Ex. H.) Petitioner filed a

13 second such motion on March 19, 2003. (Ex. I.) The Superior Court denied petitioner's

14 motions for DNA testing by order dated May 16, 2003. (Ex. J.)[10]

---

[9] See Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n.l (N.D. Cal. 1978) (judicial notice may be taken of court records), aff'd, 645 F.2d 699 (9th Cir. 1981).

[10] In its decision denying petitioner's motions for DNA testing, the Superior Court made the following statements:

> The court finds that the identity of the perpetrator was not a significant issue at the trial that was held in the case (see Penal Code § 1405(f)(3). The victim was acquainted with [petitioner] at the time of the crime, and identified him immediately afterward in a field show-up as the perpetrator. The victim testified in detail regarding the sexual attack on her by [petitioner]. This was corroborated by evidence of the presence of semen and the vaginal tear to her. Conventional testing on at least one biological sample indicated that [petitioner] could have been its donor. [Petitioner] and the victim were seen together immediately before the assault by a witness, and another witness testified to seeing them together at the taco stand immediately after the assault, at which time the victim asked the witness for help and said she had been raped. When arrested and taken to the show-up, and without being informed first that the victim was claiming that he had raped her,

1    7. On May 29, 2003, petitioner sought reconsideration of the Superior Court's
2  May 16, 2003, order. (Ex. K.) On June 13, 2003, petitioner's motion for reconsideration was
3  denied. (Ex. L.)
4    8. On June 4, 2003, petitioner filed an amended petition for writ of habeas corpus
5  in this court. The court served the amended petition and ordered a response.
6    9. On August 21, 2003, respondent, construing the amended petition as one
7  alleging three claims (the Miranda claim, ineffective assistance of counsel, and the claim
8  concerning the DNA testing), moved to dismiss the petition, arguing that the ineffective
9  assistance and DNA testing claims were untimely and not exhausted.
10    10. In January 28, 2004, findings and recommendations, this court construed the
11  June 4, 2003, amended petition to allege only the Miranda claim and recommended abeyance to
12  permit petitioner the opportunity to exhaust his ineffective assistance and DNA testing claims.
13  The district court adopted these recommendations on March 12, 2004, and the case was abeyed
14  with instructions to petitioner to move for leave to amend once exhaustion was complete.
15  /////

---

[petitioner] blurted out, "I didn't rape her and I didn't rip her clothes off," a damaging admission of guilt. At the trial, [petitioner] did not testify, and argued to the jury that [petitioner] had engaged in consensual sex with the victim.

Nor would identity of the perpetrator be a significant issue at a retrial of the [petitioner], were DNA testing performed. Although [petitioner] now for the first time claims that he did not have sex with the victim at all, it appears that he has stated otherwise in the past: in the probation report for the case, the probation officer reported that [petitioner] admitted to the probation officer that he had had sex with the victim but that the sex was consensual. This damaging admission is a party admission that would be admissible at a retrial, under Evid. Code § 1220. (citation omitted.) Identity, in light of this admission, his previous admission upon arrest, and the strong evidence against him, even with DNA testing of the samples, simply would not be a significant issue at a retrial of the case.

(Ex. J at 2-3.)

1  11. On February 22, 2005, petitioner filed a motion for leave to file an amended petition and a proposed second-amended petition . This court dismissed as unexhausted several claims contained in the proposed second-amended petition (designated as claim 4 and sub-claims 2 (I), (J) and (L)) and allowed the action to proceed with the remaining claims, described above in the first paragraph of these findings and recommendations.

C. Analysis

The California Supreme Court denied review of petitioner's judgment of conviction on direct appeal on March 28, 2001. The ninety-day period during which petitioner could have filed a petition for writ of certiorari in the United States Supreme Court expired on June 26, 2001. See Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). Therefore, petitioner's judgment of conviction became final for purposes of § 2244(d)(1)(A) on June 26, 2001. (Id.)

The AEDPA period of limitation is not tolled during the interval between the date on which a petitioner's judgment becomes final and the date on which the petitioner files his first state collateral challenge. Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). Accordingly, the one-year statute of limitations began to run on June 27, 2001, and ran without interruption until March 28, 2002, when petitioner filed his first petition for writ of habeas corpus in this court. Because less than one year had elapsed, petitioner's first petition, containing his Miranda claim, was timely filed.

Petitioner's second petition in this court, also containing only a Miranda claim, was filed on June 4, 2003. Respondents argue that this petition was untimely. As noted above, the one-year statute of limitations in this case began to run on June 27, 2001. The statute ran without interruption until May 3, 2002, when petitioner filed a petition for writ of habeas corpus

/////
/////
/////
/////

in the California Superior Court.[11]  A total of 310 days elapsed between June 27, 2001, and May 3, 2002, leaving petitioner with 55 days remaining in which to file his federal petition.

The petition for writ of habeas corpus filed in the California Superior Court was denied on May 24, 2002.  Petitioner next filed a motion for reconsideration of the May 24, 2002 order.  That motion was denied on July 29, 2002.  The statute of limitations began to run again on July 30, 2002 and ran without further interruption for 55 days, until September 22, 2002, when it expired.[12]  Petitioner's first-amended federal habeas corpus petition was received for filing in this court on June 4, 2003, well after the one-year period of limitation had run.  Accordingly, that petition is not timely filed.  Petitioner's second amended petition, on which this action is proceeding, was filed on June 1, 2005.  Because the statute of limitations had already expired, this petition is also untimely.[13]

/////

---

[11]  The federal petition filed March 28, 2002 did not operate to toll the statute of limitations.  See Duncan v. Walker, 533 U.S. 167, 180 (2001) (holding that the tolling provision of section 2244(d)(2) applies only to state post-conviction review but not during the pendency of applications for federal review).

[12]  As described above, on December 11, 2002, petitioner filed a motion for DNA testing pursuant to Cal. Pen. Code § 1405 in the California Superior Court.  (Ex. H.)  This motion did not toll the statute of limitations.  See Malcom v. Payne, 281 F.3d 951, 957-59 (9th Cir. 2002) (petition for clemency under Washington state law was not an application for "state post-conviction or other collateral review" and therefore did not toll the statute); Moore v. Cain, 298 F.3d 361, 366-67 (5th Cir. 2002) (state court mandamus application requesting that trial court be directed to rule on state habeas application was not an application for collateral review with respect to prisoner's conviction, and thus did not toll one-year limitation period); Hodge v. Greiner, 269 F.3d 104, 107 (2d Cir. 2001) (finding no basis for equitable tolling where petitioner sought discovery, on which he intended to base his collateral attack, through state law proceeding rather than timely filing habeas petition); Johnson v. Lewis, 310 F.Supp.2d 1121, 1125-26 (CD.Cal. 2004) (petitioner not entitled to statutory tolling for a petition for writ of mandate because it only sought the return of property seized during his arrest and was not directed at his underlying conviction and sentence).  See also Lloyd v. Van Natta, 296 F.3d 630, 633 (7th Cir. 2002) (noting that prisoner has the option of filing a timely petition and then seeking the district court's help in obtaining discovery to fill in missing portions of the petition).

[13]  There is no basis for a finding of equitable tolling of the statute of limitations in the record before this court.

III. Relation Back of New Claims

An application for a writ of habeas corpus "may be amended or supplemented as provided in the rules of civil procedure applicable to civil actions." 28 U.S.C. § 2242. See also Rule 11, Fed. R. Governing § 2254 Cases (providing that the Federal Rules of Civil Procedure may be applied in habeas corpus proceedings to the extent that the rules of civil procedure are not inconsistent with any statutory provision or with the rules governing habeas cases); Fed. R. Civ. P. 81(a)(2) (providing that the Federal Rules of Civil Procedure are applicable to proceedings for habeas corpus "to the extent that the practice in such proceedings is not set forth in statutes of the United States, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Proceedings"). Under Federal Rule of Civil Procedure 15(a), a habeas petitioner may amend his pleadings once as a matter of course before a responsive pleading is served and may seek leave of court to amend his pleading at any time during the proceeding. Mayle v. Felix, ___ U.S. ___, 125 S. Ct. 2562, 2569 (2005). Under Rule 15(c), a petitioner's amendments made after the statute of limitations has run will relate back to the date of his original pleading if the new claims arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. Id. (citing Fed. R. Civ. P. 15(c)(2)).

In Mayle v. Felix, the Supreme Court explained that "[t]he 'original pleading' to which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas proceeding." Id. at 2569-70. The Court observed that the complaint in an ordinary civil case need only provide fair notice of the plaintiff's claim and the grounds on which the claim rests, while a habeas petition is required to specify all grounds for relief available to the petitioner and state the facts supporting each ground. Id. at 2570. Because of this difference between civil complaints and habeas petitions, the relation back of new habeas claims "depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." Id. at 2572. The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence" will consist of each separate set of facts that supports a ground

for relief. Id. at 2573. Applying these principles in Mayle, the Court ruled that the petitioner's new claim did not relate back to his original claim because the new claim arose from the petitioner's own pretrial interrogation and was different in time and place from his original claim, which arose from the pretrial police interrogation of a witness. Id. at 2572-73.

The court now turns to a comparison of the claim raised in petitioner's first two petitions filed in this court and the two additional claims raised in his second-amended petition filed on June 1, 2005. The claim alleged in the original petition and the first amended petition is that petitioner's statements made to the police preceding his arrest should have been suppressed because they were taken in violation of Miranda. In his second amended petition filed on June 1, 2005, petitioner adds additional claims that (1) his trial counsel rendered ineffective assistance through numerous errors of counsel; and (2) the California Superior Court erred when it denied petitioner's motions for DNA testing.

Respondents do not dispute the timeliness of petitioner's Miranda claim and this court finds that the Miranda claim is timely filed. However, after careful consideration of petitioner's original and amended petitions, the court finds that petitioner's ineffective assistance of counsel claims and his claim that the trial court erred in failing to conduct DNA testing do not share a common core of operative facts with petitioner's original Miranda claim and therefore do not relate back to the original timely filed petition. Each claim is based on a completely separate set of facts and each is different in time and place from petitioner's original Miranda claim.[14] Therefore, petitioner's DNA and ineffective assistance of counsel claims should be dismissed as untimely.

/////

/////

/////

---

[14] None of petitioner's sub-claims of ineffective assistance of counsel relates to the Miranda issue.

11

IV. <u>Miranda Claim</u>

    A. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at different result. <u>Early v. Packer</u>, 573 U.S. 3, 8 (2002) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. <u>Williams</u>, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id.</u> at 412; see also <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court

1  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal
2  habeas court independently reviews the record to determine whether habeas corpus relief is
3  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).
4      B.  Analysis
5          Petitioner claims that his rights pursuant to the Fifth and Fourteenth Amendment
6  were violated by the trial court's introduction of his statement to Officers Bankie and Anderson
7  that "I didn't rape . . . her and I didn't rip her clothes off."  This claim was rejected by the
8  California Court of Appeal in a written decision on petitioner's direct appeal, and by the
9  California Supreme Court without comment on petition for review.  (See Exs.  A, C.)
10 Respondent urges that the claim be denied on the merits.  The state appellate court rejected
11 petitioner's Miranda claim as follows:

> The Attorney General concedes that [petitioner] was in custody when he made the subject statement, but denies that the conversations between [petitioner] and the deputies constituted interrogation.  Therefore, the Attorney General argues, [petitioner's] statement was voluntary and admissible . . .
>
> . . . Miranda holds that before a suspect in custody may be interrogated concerning possible involvement in a crime, he must first be advised of his right to remain silent and be represented by counsel, that anything he says may be used against him and that if he is indigent an attorney will be appointed to represent him. (Miranda, supra, 384 U.S. at pp.  444, 472-474 [16 L.Ed.2d at pp. 706-707, 722-723].)  On an appeal from denial of a motion to exclude statements alleged to have been obtained in violation of Miranda, we accept as true the trial court's factual findings if supported by sustantial evidence, but exercise our independent judgment to determine whether the statement at issue was obtained illegally.  (People v.  Bradford (1997) 14 Cal.4th 1005, 1032.)  A party admission elicited from a defendant in custody pursuant to interrogation is inadmissible if not preceded by adequate Miranda advisement given at the accusatory stage of the case.  (Miranda, supra, at pp.  478-479.)  Volunteered statements, by contrast, are not barred.  (Id. at p.  478.)
>
> Since the fact of custody is not contested here, the issue turns on whether the statement was elicited by law enforcement interrogation.  The test is whether the officers should have known that their remarks were likely to evince incriminating statements.  (Rhode Island v.  Innis (1980) 446 U.S. 291, 300, 301 [64 L.Ed.2d

> 197, 307-308]; People v. Ray (1996) 13 Cal.4th 313, 336-337.) We conclude [petitioner's] conversations with Bankie and Anderson did not qualify as interrogation under this standard.
>
> The officers's comments in the present case were off-hand, innocuous comments more like those at issue in People v. Clark (1993) 5 Cal.4th 950, 984-985 [police respond to the defendant's questions about possible penalties for murder with estimate of seven and one-half years], or People v. Sullivan (1990) 217 Cal.App.3d 237, 240 ["I think I have something here"]. Deputy Anderson simply explained that [petitioner] was not under arrest. Deputy Bankie effectively cut off further conversation when he told [petitioner] to "relax. It's all over now." Their remarks do not resemble the cases where officers have confronted a defendant with some incriminating evidence, or used coercive techniques to extract a confession or an admission. (citations omitted.) Viewed objectively, these remarks were not likely to elicit incriminating statements, and there is nothing in the record to suggest the officers should reasonably have believed they would. Since the conversations with [petitioner] did not qualify as "custodial interrogation," the requirements of Miranda for a constitutional advisement were not triggered.
>
> [Petitioner] nevertheless argues that the officers' conduct in handcuffing him and transporting him to a field showup "was 'reasonably likely to elicit an incriminating response' from [petitioner as] to what was taking place." This argument confuses the distinction between custody and interrogation. There is no question, taking into account the officers' *conduct*, that [petitioner] was in custody. The *conversations* [petitioner] has pinpointed did not require any response from him. Thus, as in Innis, supra, it cannot be said the officers should have known their remarks were likely to elicit an incriminating response. (446 U.S. at pp. 302-303 [64 L.Ed.2d at pp. 308-309].)

(Opinion at 5-8.)

To prevail on a Miranda claim, a petitioner seeking federal habeas relief must demonstrate that his statements were obtained in violation of the rules of custodial interrogation established by the United States Supreme Court in Miranda v. Arizona, 384 U.S. 436 (1966). In Miranda, the Supreme Court held that a suspect subject to custodial interrogation has a right to consult with an attorney and have counsel present during questioning and that police must explain this right to the suspect before questioning begins. 384 U.S. at 469-73. The advisements required by Miranda arise from the Fifth Amendment right against self-incrimination, which

1  guarantees that any person taken into custody shall be informed of his important constitutional
2  rights and shall be given the opportunity knowingly and voluntarily to waive those rights before
3  being interrogated.  384 U.S. at 444.

4  "An individual is 'in custody' at the point a reasonable person would feel that he
5  was not free to terminate the interrogation."  Bains v. Cambra, 204 F.3d 964, 972 (9th Cir. 2000)
6  (citing Thompson v. Keohane, 516 U.S. 99, 111-12 (1995)).  When an individual in custody
7  makes a statement, "custody alone is not sufficient to demonstrate involuntariness."  Medeiros v.
8  Shimoda, 889 F.2d 819, 825 (9th Cir. 1989) (citing United States v. Watson, 423 U.S. 411, 424
9  (1976)).  "'The fundamental import of the [Fifth Amendment] privilege while an individual is in
10 custody is not whether he is allowed to talk to the police without the benefit of warnings and
11 counsel, but whether he can be *interrogated*.'"  Medeiros, 889 F.2d at 825 (quoting Miranda, 384
12 U.S. at 478).  It is well established that not every question asked in a custodial setting constitutes
13 interrogation.  United States v. Mata-Abundiz, 717 F.2d 1277, 1278 (9th Cir. 1983) (citing
14 United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1981)); see also United States v. Foster,
15 227 F.3d 1096, 1102-03 (9th Cir. 2000).  Questions asked while in custody constitute
16 interrogation if, under all the circumstances involved in the case, the questions were reasonably
17 likely to elicit an incriminating response from the suspect.  Rhode Island v. Innis, 446 U.S. 291,
18 301 (1980); United States v. Foster, 227 F.3d at 1103;  United States v. Gonzalez-Sandoval, 894
19 F.2d 1043, 1046 (9th Cir. 1990).  Spontaneous statements not made in response to interrogation
20 are admissible.  Oregon v. Elstad, 470 U.S. 298, 309, 318 (1985); Innis, 446 U.S. at 300-01;
21 Medeiros, 889 F.2d at 824-25.

22 In the present case, the California Court of Appeal concluded that the remarks of
23 Officers Bankie and Anderson were simply innocuous comments that were not likely to elicit
24 incriminating statements.  This court would add that the officers' comments were not likely to
25 elicit any statements at all, incriminating or not, because they were not questions or likely to be
26 perceived as questions.  It does not appear to this court that the state appellate court's conclusion

in this regard is contrary to or an unreasonable application of clearly established law, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented at trial.  There is no evidence that petitioner's statement was made in response to any inquiry by the two officers or that any interrogation had taken place prior to petitioner's statement. Petitioner's allegation of a Miranda violation is not supported by specific facts that warrant habeas relief.  See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (citing Boehme v. Maxwell, 423 F.2d 1056, 1058 (9th Cir. 1970)).

V. Motion for Discovery

On June 22, 2005, petitioner filed a motion for discovery.  Therein, he seeks discovery related to all three of his claims before this court.  Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts permits discovery in habeas corpus actions.  A habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant and discovery is available only in the discretion of the court and for good cause shown.  See Rules Governing Section 2254 Cases, Rule 6(a) 28 U.S.C. foll. § 2254; Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999).  See also Hayes v. Woodford, 301 F.3d 1054, 1065 n.6 (9th Cir.2002) (discovery is available "only in the discretion of the court and for good cause").  After a review of the motion and in light of the recommended disposition of petitioner's claims, the court does not find good cause for an order granting the discovery petitioner seeks.

Accordingly, IT IS HEREBY ORDERED that petitioner's June 22, 2005, motion for discovery is denied.

IT IS HEREBY RECOMMENDED that:

1. Petitioner's claims that his trial counsel rendered ineffective assistance and that the California Superior Court erred when it denied petitioner's motions for DNA testing be dismissed as untimely; and

2. Petitioner's claim that his Fifth and Fourteenth Amendment rights were violated by the trial court's introduction of his un-Mirandized statement be denied on the merits.

1   These findings and recommendations are submitted to the United States District
2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
3   days after being served with these findings and recommendations, any party may file written
4   objections with the court and serve a copy on all parties.  Such a document should be captioned
5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6   shall be served and filed within ten days after service of the objections.  The parties are advised
7   that failure to file objections within the specified time may waive the right to appeal the District
8   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
9   DATED: April 20, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

008:burton675.hc